UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JESSICA GANN, <br> TOMIKA HICKS, <br> TRACEY CLARK, <br> FAYE E. MILES, <br> PAULETTA C. PRYOR, <br> MARY AUSTIN, <br><br> Plaintiffs, <br><br> vs. <br><br> JOSHUA RICHARDSON, <br> JOHN DOE, <br><br> Defendants. | No. 1:13-cv-00532-SEB-TAB |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction [Docket No. 34], filed on September 13, 2013. The parties stipulated to the dismissal of Count One of Plaintiffs' Amended Complaint on July 11, 2014, leaving only Count Two subject to this motion to dismiss. For the reasons set forth below, Defendants' motion is GRANTED.

## Factual and Procedural Background

**The Termination of Benefits**

Plaintiffs are a group of Indiana bus drivers, Head Start teachers, and teachers' aides. Because their jobs coincided with the school calendar, these employees were annually and temporarily laid off during the summer months. Compl. ¶ 5.[1] Customarily, they applied for, and

---

[1] Citations to the "Complaint" refer to Plaintiff's Amended Complaint, filed on July 17, 2013 and superseding the original document filed on March 28, 2013. *See* Docket No. 28.

received, unemployment insurance benefits from the Indiana Department of Workforce Development ("DWD") for these temporary lay-offs. Compl. ¶ 7. The United States provides funding for the states' unemployment benefit programs pursuant to the Social Security Act. While the federal government imposes some requirements on state programs as conditions of continued funding, the participating states are entitled to set their own criteria for eligibility. *See* 42 U.S.C. § 503.

In 2011 and 2012, the Indiana legislature amended the state's unemployment insurance eligibility law to provide that those employees who are on a vacation or planned break from work are not "unemployed" for purposes of receiving state benefits. Ind. Code § 22-4-3-5.[2] Pursuant to the changes in the statute, DWD determined that Plaintiffs were not eligible for the unemployment benefits they applied for in the summer of 2012, and it accordingly terminated their benefits—doing so without according the affected workers an opportunity for a prior, individualized hearing. Compl. ¶ 10. Several of the employees whose benefits were terminated filed timely administrative appeals, and on December 28, 2012, the review board upheld DWD's interpretation of the statute and its corresponding denial of benefits. Compl. ¶ 13. Plaintiffs brought a claim in this Court containing two counts. Count One alleges that Defendant Joshua Richardson, acting in his capacity as the Deputy Commissioner of DWD, deprived them of due process by denying them benefits without providing a hearing and, relatedly, violated the "fair hearing" provision of Section 303(a)(3) of the Social Security Act, 42 U.S.C. § 503(a)(3).[3] *See*

---

[2] This provision was added by Public Law 2-2011, Section 3, and amended by Public Law 6-2012, Section 152.
[3] The parties later stipulated to the dismissal of Count One. *See below*.

Compl. ¶ 23. Count Two alleges that Defendants' actions violated the "when due" provision of Section 303(a)(1) of the Social Security Act, 42 U.S.C. § 503(a)(1).[4]

**The Indiana Suit**

After Defendants had moved to dismiss the present case and the parties had briefed the motion,[5] the Indiana Court of Appeals issued a decision in a related matter. In *D.B. v. Review Board of Indiana Department of Workforce Development*, 2 N.E.3d 705 (Ind. Ct. App. 2013), the Court of Appeals upheld the DWD review board's interpretation of the 2011 and 2012 statutory changes, pursuant to which the board had determined that a group of school bus drivers—including several of the plaintiffs in this case—did not qualify as "unemployed" during the Anderson school system's summer break. 2 N.E.3d at 715. The court concluded: "[S]chool employees who are not working as a result of a scheduled school closure—including those who are not working during the period between academic years—and who have reasonable assurance of continued employment after the closure concludes, are excluded from collecting unemployment compensation." *Id.* (citing *Indianapolis Pub. Sch. v. Review Bd. of Ind. Emp't Sec. Div.,* 473 N.E.2d 155, 157–58 (Ind. Ct. App. 1985)). The Indiana Supreme Court subsequently denied transfer of the case, rendering the Court of Appeals' interpretation of state law final. *See* 4 N.E.3d 1188 (Ind. 2014).

**Procedural Developments**

In recognition of the impact of the Indiana Court of Appeals' decision on this matter, we issued an Order to Show Cause on June 20, 2014, directing Plaintiffs to show why the claims contained in Count One of their complaint should not be dismissed. Docket No. 44. In particular,

---

[4] Defendant "John Doe," according to Plaintiffs, is an "unknown individual or individuals serving as an employee or agent of the DWD who either alone or acting in concert with Richardson caused the constitutional deprivations alleged in this Amended Complaint." Compl. ¶ 6.

[5] Only Defendants' reply brief post-dated the Indiana Court of Appeals decision. Docket No. 43.

we desired to give Plaintiffs an opportunity to distinguish their factual allegations from the holding of the Court of Appeals with respect to a "property" entitlement to unemployment benefits under the due process clause. *Id.* at 3–4. Plaintiffs responded by stipulating to the dismissal of Count One—a dismissal we acknowledged on July 18, 2014. Docket No. 46.

Remaining before us is Defendants' September 13, 2013 motion to dismiss, which originally addressed both counts but has been mooted with respect to Count One. *See* Docket No. 34.

## Legal Analysis

### Standard of Review

As we discuss below, Defendants argue both that Plaintiffs lack standing to raise their claim under the Social Security Act and that Count Two fails to state a claim upon which relief can be granted. Their motion thus implicates Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**1. Standard under Rule 12(b)(1)**

The Federal Rules of Civil Procedure command that courts dismiss any suit over which they lack subject matter jurisdiction—whether acting on the motion of a party or *sua sponte*. *See* Fed. R. Civ. Pro. 12(b)(1). In ruling on a motion to dismiss under Rule 12(b)(1), we "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771 (7th Cir. 2002); *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). We may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter

4

jurisdiction exists." *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg,* 813 F. Supp. 2d 1069, 1074 (S.D. Ind. 2011).

**2. Standard under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.,* 215 F.3d 758, 765 (7th Cir. 2000). Federal Rule of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a

"formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

## Discussion

In their remaining claim as set out in Count Two of the Amended Complaint, Plaintiffs allege that, in suspending their unemployment benefits in the summer of 2012 without first conducting a hearing, Defendants violated the Social Security Act. Specifically, they allege that Defendants ran afoul of Section 303, which provides that the Secretary of Labor shall not

provide funding for state unemployment programs unless the state implements "[s]uch methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation *when due*." 42 U.S.C. § 503(a)(1) (emphasis added). Defendants seek dismissal of this "when due" clause claim on two grounds. First, they argue that Plaintiffs lack standing to bring a claim under Section 303, which they insist does not create a private right of action. Second, they argue that even if Plaintiffs have a cause of action, there has been no violation of the Act and Plaintiffs are thus not entitled to relief as a matter of law. We address these arguments in turn.

**I.      Standing and subject matter jurisdiction**

The United States Constitution establishes that the jurisdiction of the federal courts extends only to matters presenting live "cases" or "controversies." *See Cent. Soya Co., Inc. v. Consol. Rail Corp.*, 614 F.2d 684, 686 (7th Cir. 1980). Among the justiciability requirements imposed by Article III of the Constitution is that the plaintiff have standing; this is a prerequisite which in turn depends, in part, on having suffered an "'injury in fact'—an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright,* 468 U.S. 737, 751 (1984)). The analysis employed by the Supreme Court in determining whether a federal statute creates a private cause of action—in other words, whether it creates a right that may be vindicated in the courts—has grown more restrictive in recent decades. Courts will interpret a statute as generating a cause of action only where congressional intent to do so is clear: "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not

7

create one, no matter how desirable that might be as a policy matter." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (internal citations omitted).

In a similar fashion, the Supreme Court has in recent times endorsed more stringent criteria in determining when a statute has conferred individual rights that may be enforced under 42 U.S.C. § 1983—the "all purpose" cause of action allowing plaintiffs to vindicate federally guaranteed rights that have been violated by state actors.[6] In its decision in *Blessing v. Freestone,* 520 U.S. 329 (1997), the Court outlined a three-part test:

> **First**, Congress must have intended that the provision in question benefit the plaintiff. **Second**, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. **Third**, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

520 U.S. at 340–341 (emphasis added). The Court affirmed the rigor of this test in *Gonzaga University v. Doe,* 536 U.S. 273 (2002), where it held that Section 1983 provides a cause of action for nothing less than an "unambiguously conferred" right; "[I]t is *rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced" under Section 1983. 536 U.S. at 283.

We view it as unlikely that the Seventh Circuit, applying this contemporary understanding, would conclude that the "when due" provision of Section 303(a)(1) either explicitly creates a cause of action or implicitly confers one that may be redressed via 42 U.S.C. § 1983. Section 303(a)(1) was enacted pursuant to the spending clause, and by its terms it confers no individual right, *cf. Bertrand ex rel. Bertrand v. Maram,* 495 F.3d 452, 456 (7th Cir.

---

[6] Whether a statutory violation may be enforced through § 1983 is a "different inquiry than that involved in determining whether a private right of action can be implied from a particular statute." *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002) (quoting *Wilder v. Va. Hospital Ass'n*, 496 U.S. 498 (1990)). However, the two inquiries overlap significantly to the extent that an unambiguous congressional intent to confer an *individual right* is a prerequisite for both. *See Gonzaga,* 536 U.S. at 284.

2007); in fact, the remedy it provides if a state fails to establish a system that adequately pays benefits "when due" is for the Secretary of Labor to withhold funding. *See* 42 U.S.C. § 503(b). Moreover, even if it were possible to read the statute as conveying a pellucidly clear right upon individual plaintiffs, basic principles of federalism dictate that the Act does not "unambiguously impose a binding obligation on the states." *Cf. Blessing,* 520 U.S. at 341. As the Supreme Court held in *South Dakota v. Dole*, 483 U.S. 203 (1987), spending clause legislation may place conditions on funding to the states, but it may not "coerce" them in their exercise of their reserved powers. 483 U.S. at 211. *See also NFIB v. Sebelius,* 132 S. Ct. 2566, 2601–2607 (2012) (holding that Medicaid expansion under "Obamacare" exceeded the bounds of the spending clause by excessively "coercing" the states). Indiana's participation in the unemployment insurance funding program is voluntary, and it can refuse to adhere to the Act's requirements— or withdraw from participation entirely—if it is willing to forgo federal funds. *See Collins v. Hamilton,* 349 F.3d 371, 374 (7th Cir. 2003) (citing *Wilder,* 496 U.S. at 502) (noting that state participation in the similarly structured Medicaid program is "completely voluntary"). The limitations imposed on Congress by Article I dictate that it cannot be otherwise.

However, we are not free to decide this issue as a matter of first impression. *See Saban v. U.S. Dep't of Labor*, 509 F.3d 376, 378 (7th Cir. 2007) ("[T]he lower courts . . . are not to anticipate the overruling of a Supreme Court decision, but are to consider themselves bound by it until and unless *the Court* overrules it, however out of step with current trends in the relevant case law the case may be."). As Plaintiffs have pointed out, the Supreme Court, in decisions that pre-dated the *Blessing* and *Gonzaga* line of cases, has accepted the existence of a cause of action to enforce provisions of the Social Security Act, including the "when due" clause. In *California Department of Human Resources Development v. Java,* 402 U.S. 121 (1971), the Court endorsed

9

the right of an unemployment claimant to bring suit under Section 303(a)(1) in challenging a California statute that delayed payment of benefits. *Id.*[7] The Seventh Circuit has read *Java* as establishing that Section 303(a)(1) "applies to state programs not only when the Secretary of Labor certifies the programs, but . . . is also a general standard that state programs must meet." *Burtton v. Johnson,* 538 F.2d 765, 768 (7th Cir. 1976).

More recently, in *Zambrano v. Reinert,* 291 F.3d 964 (7th Cir. 2002), the Seventh Circuit held that a Wisconsin policy did not violate the "when due" clause, but nevertheless implicitly recognized the continued vitality of the cause of action. *See* 291 F.3d at 968–970. The decision pre-dated *Gonzaga* by only a matter of weeks, and Judge Easterbrook's concurrence in *Zambrano*, which protested vigorously the court's unstated assumption that a cause of action existed, closely hewed to the highly restrictive analysis the Supreme Court had introduced in *Blessing* and was soon to reaffirm and strengthen in *Gonzaga*. In his words:

> [T]he question is no longer whether the statute *precludes* a private right of action, but whether the law *creates* one. When the defendant is a state official, § 1983 gets part of the way there—but the general language of § 1983 must not be used to sidestep limitations built into another federal statute. Section 1983 allows courts to enforce personal rights, but a statute may influence behavior without creating "rights."

*Zambrano,* 291 F.3d at 972–973 (Easterbrook, J., concurring) (emphasis original). Nonetheless, the Supreme Court has never explicitly repudiated *Java* and like cases, and the Seventh Circuit has not applied the recent changes in Section 1983 jurisprudence to overrule its earlier stance that a cause of action to enforce the "right" created by the "when due" clause is available. Unless and until the higher courts take these steps, we cannot anticipate them. *See Jenkins v. Bowling,*

---

[7] As the Seventh Circuit later noted, *Java*'s endorsement of the existence of a private right under Section 303(a)(1) itself drew inspiration from an "extremely cryptic dictum" in an earlier Supreme Court decision, *Rosado v. Wyman*, 397 U.S. 397, 421 (1970). *See Jenkins v. Bowling,* 691 F.2d 1225, 1229 (7th Cir. 1982).

691 F.2d 1225, 1229 (7th Cir. 1982) (observing that the existence of a private remedy for Section 303(a)(1) is "too well settled to be questioned by us").

Despite the grave doubt that recent decisions have cast on Plaintiffs' standing to bring suit here, we therefore proceed under the assumption that standing exists.

## II.     Viability of the Section 303 Claim

Section 303(a)(1) of the Social Security Act directs the Secretary of Labor to ensure that states employ methods that are "reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1). When read literally, this provision seems to require only that the state pay benefits in a timely manner to those claimants whom it has *determined to be eligible.* The Seventh Circuit has long rejected this narrow, formalistic reading, reasoning that "Congress had larger objectives in view than the ministerial competence of state comptrollers." *Jenkins*, 691 F.2d at 1229. After all, such a limited construction of the statute would allow a state to remain in the Secretary of Labor's good graces simply by indefinitely postponing the initial eligibility determination, rendering the clause little more than a "nullity." *See Pennington v. Didrickson,* 22 F.3d 1376, 1386 (7th Cir. 1994).

Rather, as the Seventh Circuit affirmed in *Zambrano,* we are to read the "when due" clause as a "timeliness" requirement that extends to both eligibility determinations and the payments themselves: "[T]he state should determine who is eligible to receive unemployment compensation and make payments to such individuals at the earliest stage that is administratively feasible." *Zambrano,* 291 F.3d at 968 (citing *Java,* 402 U.S. at 131).[8] The contours of the test developed by the Supreme Court and the Seventh Circuit are informed, albeit in limited fashion,

---

[8] This wording echoes the language employed by Department of Labor regulations implementing the statute, which instruct the Secretary to ensure the "full payment of unemployment benefits to eligible claimants with the *greatest promptness that is administratively feasible*." 20 C.F.R. § 640.3(a) (emphasis added).

11

by a number of decisions in which the courts have applied the vague language of the clause to concrete facts.

In *Java,* the Supreme Court considered a challenge to a California statute that called for the suspension of unemployment benefits for claimants who had already successfully undergone an eligibility hearing, but whose employers had appealed their claims. 402 U.S. at 124. Examining the legislative history of the Act, the Court observed that its purpose was "to give prompt if only partial replacement of wages to the unemployed, [and] to enable workers 'to tide themselves over until they get back to their old work or find other employment, without having to resort to relief.'" *Id.* at 131 (quoting H.R. Rep. No. 615, 74th Cong., 1st Sess., 7 (1935)). On that basis, the court reasoned that the "when due" clause should not countenance delays in paying benefits after a claimant has been found eligible at a hearing—even if tentatively:

> We conclude that the word "due" in Section 303(a)(1), when construed in light of the purposes of the Act, means the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions; any other construction would fail to meet the objective of early substitute compensation during unemployment.

*Id.* at 133. It then concluded that the California plan, under which payments were suspended an average of seven weeks pending appeal, was "not reasonably calculated to insure full payment of unemployment compensation when due." *Id.* (quoting 42 U.S.C. § 503(a)(1)).[9]

---

[9] Plaintiffs, citing a footnote from the case, contend that the Supreme Court's decision four years later in *Fusari v. Steinberg,* 419 U.S. 379 (1975), widened the scope of the statutory standard when it "found violative of the 'when due' clause . . . Connecticut's procedures for determining continued eligibility for benefits, procedures which allowed the state to suspend benefits but without an adequate prior hearing. Even absent a prior administrative determination, the Court determined that those procedures also violated the 'when due' requirements of Section 303(a)(1)." Pls.' Resp. 10 (citing *Fusari,* 419 U.S. at 382 n.3).

Plaintiffs' account of the holding and facts of *Fusari* is exaggerated. In fact, the Supreme Court there did not reach a holding on the statutory issue—though it did offer that "Connecticut's previous system often failed to deliver benefits in a timely manner"—because state law had changed since the district court's fact-finding. The Court did, in a footnote, reaffirm *Java*'s instruction that the "when due" clause not be read in so crimped a manner as only to apply to the payment of benefits to *concededly* eligible claimants. As for the facts, the plaintiff class in *Fusari* was defined as "benefit recipients whose benefits were or would be subject to termination without a prior hearing." 419 U.S. at 382 n.3. However, while they had not been given a hearing, the applicants in question had already undergone

12

The Seventh Circuit picked up this thread in *Pennington v. Didrickson,* 22 F.3d 1376 (7th Cir. 1994). There, a class of plaintiffs challenged an Illinois wage "base period" rule which often delayed claimants' successful applications for benefits until their income in the previous four business quarters was sufficient to trigger eligibility.[10] The court remanded the question of whether Illinois's scheme violated the "when due" clause, but it concluded that the scheme was subject to Section 303(a)(1) because it was an administrative provision for determining *when* payments will be made, rather than an eligibility test for determining *whether* payments will be made. *Id.* at 1385–1387. When a state's plan is subject to the statute, *Pennington* instructs that courts must inquire whether it "strikes a reasonable balance between the plaintiff class's interest in prompt payment . . . and the state's interest in minimizing the costs of eliminating delay and in preventing fraudulent claims." 22 F.3d at 1387 (quoting *Jenkins,* 691 F.2d at 1230, 1233).

In *Zambrano*, the court applied this distinction between administrative rules and eligibility rules to deny a claim under the "when due" clause.[11] There, it held that a Wisconsin rule excluding certain types of seasonal vegetable cannery employees' wages from the "base wage" period used in benefits calculations pertained to a claimant's *eligibility*, and was thus not susceptible to review under Section 303(a)(1). 291 F.3d at 968–969. In the court's words:

> Zambrano contends that the [Wisconsin policy] violates the When Due clause because it operated to exclude the wages he earned . . . from his eligibility determination. Zambrano's claim is unavailing, however, because the [policy] sets forth a method of determining whether work performed by an applicant is "employment" and thus whether the applicant is eligible to receive benefits. Therefore, because it determines *who* is eligible to receive benefits, as opposed to *when* the eligibility determination is made or *when* an eligible person receives

---

both an initial determination of eligibility and a "seated interview"; they protested that the failure to provide a full hearing prior to denying benefits violated the due process clause, and that the failure to pay benefits after an unsuccessful interview—and while appeal was pending—violated the "when due" clause. 419 U.S. at 380–382.

[10] For example, the lead plaintiff, under a different wage accounting system, would have been eligible to receive benefits as of July, but she had to wait until October 1—when another full quarter had elapsed. *Pennington,* 22 F.3d at 1379.

[11] As we have discussed above, *see* § I, the court did assume the continued availability of a cause of action under Section 303(a)(1), even in the midst of the tectonic shifts in the Supreme Court's jurisprudence.

benefits, the [policy] is an eligibility requirement that is "beyond the reach of the 'when due' clause."

*Id.* (quoting *Pennington*, 22 F.3d at 1381).

Plaintiffs' grievance here, however, like that of the claimants in *Zambrano*, does not implicate the "when due" clause. They allege that the DWD, applying the change in the state's eligibility criteria passed by the legislature the previous year (amending Ind. Code § 22-4-3-5), terminated their benefits sometime in the summer of 2012 without according them administrative hearings. Compl. ¶ 10. After a number of members of the putative class filed administrative appeals, the Review Board uniformly upheld the suspensions, in decisions issued in December 2012, as the correct application of Indiana law. Compl. ¶ 13. The Indiana Court of Appeals, ruling on a challenge brought by some of the very same plaintiffs, agreed. The Indiana court held that Indiana Code § 22-4-3-5 barred "school employees who are not working as a result of a scheduled school closure . . . and who have reasonable assurance of continued employment after the closure concludes"—a class encompassing the plaintiffs here—from collecting unemployment benefits during summer recess. *D.B. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 2 N.E.3d 705, 715 (Ind. Ct. App. 2013), *transfer denied* 4 N.E.3d 1188 (Ind. 2014).[12]

In short, Plaintiffs were not, and are not now, entitled to the unemployment benefits they sought.[13] If the final adjudication had restored the benefits that DWD suspended in the summer of 2012, a claim challenging the time lag between the suspension of benefits and the administrative review might have fallen within Section 303(a)(1)'s scope. *Cf. Java,* 402 U.S. at

---

[12] Plaintiffs would be entitled, of course, to raise a due process challenge to the manner in which the state applied the new eligibility criteria to their cases—and to attempt to distinguish themselves from the plaintiffs the Indiana court ruled to be ineligible for benefits in *D.B. See* Order to Show Cause, Docket No. 44 at 4 n.4. No due process claim is before the Court, however.

[13] Plaintiffs implicitly conceded as much by failing to respond to our Order to Show Cause, which invited them to object to the conclusion that the Indiana Court of Appeals' decision in *D.B.* foreclosed their "property interest" in unemployment benefits, thus vitiating their due process claim. Docket No. 44. After Plaintiffs declined to respond to the Order to Show Cause, the parties stipulated to the dismissal of the due process claim. Docket No. 45.

14

133 (holding that California procedures violated "when due" clause by denying benefits after eligibility interviews, even though the eligibility interviews are "effective in insuring that benefits are limited to legally eligible claimants"). As it is, however, there is no nexus at all between the "timeliness" with which the state administers its benefits to entitled claimants and the state's categorical, *legislative* determination that the class to which Plaintiffs belonged was simply ineligible. *See Zambrano,* 391 F.3d at 969 (holding that "when due" clause was not implicated where plaintiff "could have waited forever and still would have been ineligible to receive benefits"). The Social Security Act grants the states "free rein" to set their own eligibility standards. *Pennington,* 22 F.3d at 1382 (quoting *N.Y. Tel. Co. v. N.Y. State Dep't of Labor*, 440 U.S. 519, 539 (1979)). Those aggrieved by the substantive standards adopted by a state must therefore seek redress through the legislative process rather than the courts. *See Bi-Metallic Inv. Co. v. Colorado*, 239 U.S. 441, 445 (1915); *Brown v. McGarr,* 774 F.2d 777, 784 (7th Cir. 1985).

Plaintiffs' factual allegations are not in dispute. Even accepting their allegations as true, they have not stated a claim for relief under the "when due" clause. Count Two is accordingly subject to dismissal.

## Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss for Failure to State a Claim is GRANTED, and Plaintiffs' Count Two claim under Section 303(a)(1) of the Social Security Act is accordingly DISMISSED WITH PREJUDICE. Because both counts of Plaintiff's amended complaint have now been dismissed, final judgment shall enter against Plaintiffs and in favor of Defendants.

IT IS SO ORDERED.

Date: _____9/3/2014_____   _____*[signature: Sarah Evans Barker]*_____
                                SARAH EVANS BARKER, JUDGE
                                United States District Court
                                Southern District of Indiana

Distribution:

Geoffrey S. Lohman
FILLENWARTH DENNERLINE GROTH & TOWE LLP
glohman@fdgtlaborlaw.com

William R. Groth
FILLENWARTH DENNERLINE GROTH & TOWE LLP
wgroth@fdgtlaborlaw.com

William Martain Krowl
KROWL LAW, LLC
krowllegal@gmail.com

David A. Arthur
OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov